1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

3
    United States of America       :
4                                   :
                                    :
5            vs                     :   13-CR-175
                                    :
6                                   :
    Matthew M. Wilson               :
7

8

9

10

11          BEFORE:      Honorable Matthew W. Brann

12          PLACE:       Williamsport, Pennsylvania

13          PROCEEDINGS: Init. App./Arraignment/Guilty Plea

14          DATE:        Thursday, September 12, 2013

15          VOLUME:      One

16

17

18

19   APPEARANCES:

20   For the United States:    George J. Rocktashel, Esquire
                               U.S. Attorney's Office
21                             240 West Third Street
                               Suite 316
22                             Williamsport, PA  17701

23   For the Defendant:        D. Toni Byrd, Esquire
                               Federal Public Defender's Office
24                             330 Pine Street
                               One Executive Plaza
25                             Williamsport, PA  17701

1                          (2:05 p.m., convene.)

2              THE COURT:  Good afternoon.

3              MR. ROCKTASHEL:  Good afternoon, Your Honor.

4              MS. BYRD:  Good afternoon, Your Honor.

5              THE COURT:  We are here in the matter of United States

6     of America versus Matthew Mitchell Wilson.  I note the presence

7     of the Assistant United States Attorney, George Rocktashel, D.

8     Toni Byrd, Esquire, who is counsel for the defendant, and

9     Matthew Mitchell Wilson.  And I presume this is Matthew

10    Mitchell Wilson?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  Is this case here for initial appearance,

13    arraignment and a guilty plea?

14             MR. ROCKTASHEL:  Yes, it is, Your Honor.

15             THE COURT:  Mr. Wilson, you have, according to my

16    courtroom deputy, completed a financial affidavit.  Is that

17    correct?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Is the information in that affidavit

20    accurate?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  All right.  Mr. Wilson, the Court will

23    advise you that you may be penalized for perjury for providing

24    false information if this information is not accurate.  Do you

25    understand that?

1          *THE DEFENDANT:*  Yes, sir.

2          *THE COURT:*  The Court determines that the defendant is

3   unable to afford privately retained counsel, and the Court,

4   therefore, approves the appointment of D. Toni Byrd, Esquire.

5   Mr. Wilson, before I can accept your plea of guilty with

6   respect to charges that have been brought against you in

7   criminal docket number 4:13-CR-175, it is necessary for me to

8   establish for the record that you fully and completely

9   understand your rights under the law and that you understand

10  the consequences of a guilty plea.

11          Do you understand what I have just said to you?

12          *THE DEFENDANT:*  Yes, Your Honor, I do.

13          *THE COURT:*  All right.  Mr. Wilson, you are going to

14  be placed under oath and I'm going to ask certain questions of

15  you.  And you should be advised if you give me any false

16  answers you could again be subject to further prosecution for

17  perjury or for making false statements.  Do you understand what

18  I have just said to you?

19          *THE DEFENDANT:*  Yes, sir.

20          *THE COURT:*  If you do not hear or do not understand

21  one of my questions, please interrupt me.  I am perfectly

22  willing to repeat or to rephrase my question.  Therefore, if

23  you respond to one of my questions, I am going to assume that

24  you have heard and understood the question.  Do you understand

25  what I have just said to you?

1          *THE DEFENDANT:*  Yes, I do, sir.

2          *THE COURT:*  You may also talk to your attorney, Ms.

3    Byrd, at any time, and you can talk to Ms. Byrd privately if

4    you wish.  Do you understand this?

5          *THE DEFENDANT:*  Yes, sir.

6          *THE COURT:*  All right.  At this time I'm going to ask

7    my courtroom deputy, Mrs. McLaughlin, to administer the oath.

8    Mrs. McLaughlin.

9          *THE COURTROOM DEPUTY:*  Please raise your right hand.

10                    (The defendant was sworn.)

11          *THE DEFENDANT:*  I do.

12          *THE COURTROOM DEPUTY:*  Please state your full name for

13    the record.

14          *THE DEFENDANT:*  Matthew Mitchell Wilson.

15          *THE COURTROOM DEPUTY:*  Thank you.

16          *THE COURT:*  All right.  Mr. Wilson, how old are you?

17          *THE DEFENDANT:*  Twenty-two, Your Honor.

18          *THE COURT:*  And what is your educational background?

19          *THE DEFENDANT:*  I've completed 12th grade in high

20    school and I'm currently seeking an associate's degree in

21    college with 45 credits under me right now.

22          *THE COURT:*  All right.  Thank you.  Mr. Wilson, have

23    you ever been treated for drug or alcohol addiction or for

24    mental illness?

25          *THE DEFENDANT:*  Yes, sir.

1          *THE COURT:*  All right.  And what -- would you describe

2     your treatment?

3          *THE DEFENDANT:*  It was mental illness, sir.

4          *THE COURT:*  And when was that, sir?

5          *THE DEFENDANT:*  Currently all my life, sir.

6          *MS. BYRD:*  It's ongoing, Your Honor.

7          *THE COURT:*  It's an ongoing issue?

8          *THE DEFENDANT:*  Yes.

9          *THE COURT:*  Mr. Wilson, let me ask you this.  Have you

10    had any drugs or alcohol either today or yesterday?

11         *THE DEFENDANT:*  No, sir.

12         *MS. BYRD:*  Your Honor.

13         *THE DEFENDANT:*  Yes, sir.  Current medication.

14         *THE COURT:*  I understand that.  Let me sort of

15    rephrase that.  Have you taken any narcotic drugs, illegal or

16    elicit narcotic drugs, either today or yesterday?

17         *THE DEFENDANT:*  No, sir.

18         *THE COURT:*  Have you taken any alcohol either today or

19    yesterday?

20         *THE DEFENDANT:*  No, sir.

21         *THE COURT:*  Now, are you currently taking any

22    prescription medication?  I believe you have indicated you are.

23         *THE DEFENDANT:*  Yes, sir.

24         *THE COURT:*  What effect, Mr. Wilson, if any, does that

25    prescription medication have on your thinking, your

1   understanding or your judgment?

2            *THE DEFENDANT:*  None, sir.

3            *THE COURT:*  How are you feeling today?

4            *THE DEFENDANT:*  Tired, sir.

5            *THE COURT:*  Worn out.  Okay.  I understand that.  Do

6   you understand, Mr. Wilson, what is happening today?  Do you

7   understand why you are here in court?

8            *THE DEFENDANT:*  Yes, sir.

9            *THE COURT:*  All right.  Ms. Byrd, do you have any

10  additional questions that would be of benefit to the Court

11  concerning the effect of any of Mr. Wilson's medications on his

12  mental health?

13           *MS. BYRD:*  No, Your Honor.  I'm satisfied that he's

14  competent to plead guilty.  And I inquired of him before we

15  came into court.

16           *THE COURT:*  I presumed as much.  Thank you very much.

17  The Court, therefore, finds that the defendant's ingestion of

18  prescription medication has not impaired his present thinking,

19  understanding and judgment.

20           Mr. Wilson, have you been furnished with a copy of the

21  charges against you?

22           *THE DEFENDANT:*  Yes, sir.

23           *THE COURT:*  Mr. Wilson, do you understand those

24  charges?

25           *THE DEFENDANT:*  Yes, sir.

1          *THE COURT:*  Do you wish to have the information read
2    to you in open court?
3          *THE DEFENDANT:*  No, sir.
4          *THE COURT:*  Have you had enough time to review these
5    charges with your attorney, Ms. Byrd?
6          *THE DEFENDANT:*  Yes, sir.
7          *THE COURT:*  Has your attorney gone over the charges
8    against you and fully explained your trial rights and defenses
9    that you could bring to those charges?
10          *THE DEFENDANT:*  Yes, sir.
11          *THE COURT:*  You have a constitutional right to be
12    charged by an indictment of a grand jury, but you can waive
13    that right and consent to being charged by information of the
14    United States Attorney.  Let me explain that to you in some
15    level of detail.
16          You have the right to have these charges submitted to
17    a grand jury of 16 to 23 people, and at least 12 of these
18    people would have to find probable cause that you committed
19    this offense in order for you to be charged in the indictment.
20          Do you voluntarily give up this right and agree to let
21    the United States government bring charges against you in an
22    information?
23          *THE DEFENDANT:*  Yes, sir.
24          *THE COURT:*  Mr. Wilson, you are entitled to a jury
25    trial in these matters in which you, through your attorney,

1    your counsel, Ms. Byrd, would select a jury consisting of 12

2    persons.  At the trial and during any subsequent proceedings,

3    the government would have the responsibility of proving each

4    and every element of the crime charged against you beyond a

5    reasonable doubt.  You are presumed innocent until that burden

6    is met.  And at the trial you would have with the right,

7    through counsel, to cross examine witnesses the government

8    would present.

9          You, in turn, would have the right to subpoena

10   witnesses and evidence on your own behalf, although you are not

11   required to do so.  And should you decide not to testify or put

12   on any evidence, that decision cannot be used against you.  Any

13   finding of guilt would have to be unanimous; that is to say,

14   all 12 jurors would have to agree.

15         If you give up your right to a jury trial, you give up

16   your right to present any defenses you may have or the right to

17   appeal any pretrial motions.

18         Now, having said that to you in some detail, do you

19   understand your right to a jury trial?

20         *THE DEFENDANT:*  Yes, sir.

21         *THE COURT:*  Do you understand as well that you have a

22   right to plead not guilty and to proceed with a jury trial in

23   this matter?

24         *THE DEFENDANT:*  Yes, sir.

25         *THE COURT:*  Is it your desire now to give up your

1  right to a jury trial and to enter a plea of guilty to the

2  indictment?

3          *THE DEFENDANT:*  Yes, sir.

4          *THE COURT:*  Mr. Wilson, do you feel that you have had

5  enough time to talk this matter over with your attorney, Ms.

6  Byrd?

7          *THE DEFENDANT:*  Yes, sir.

8          *THE COURT:*  Did anyone promise or offer you anything

9  else in order to get you to plead guilty today?

10          *THE DEFENDANT:*  No, sir.

11          *THE COURT:*  Have there been any threats to you or to

12  any member of your family that caused you or forced you to

13  plead guilty today?

14          *THE DEFENDANT:*  No, sir.

15          *THE COURT:*  Are you doing this of your own free will

16  because you are, in fact, guilty?

17          *THE DEFENDANT:*  Yes, sir.

18          *THE COURT:*  Are you a citizen of the United States?

19          *THE DEFENDANT:*  Yes, sir.

20          *THE COURT:*  Mr. Wilson, do you understand that the

21  statutory maximum penalty for making an Internet bomb threat

22  noted at Title 18 United States Code at section is 844(e) is a

23  term of imprisonment of ten years, a fine of of $250,000, a

24  maximum term of supervised release of up to three years as well

25  as the costs of prosecution, imprisonment, probation or

1  supervised release order, denial of certain federal benefits

2  and an assessment in the amount of $100?  Do you understand

3  that?

4  　　　　*THE DEFENDANT:*  Yes, sir.

5  　　　　*THE COURT:*  Do you understand as well that there are

6  sentencing guidelines that this Court, that I, must consider

7  before I pass sentence on you?  Do you understand that?

8  　　　　*THE DEFENDANT:*  Yes, sir.

9  　　　　*THE COURT:*  Have you and Ms. Byrd talked about the

10  sentencing guidelines that might apply to your case?

11  　　　　*THE DEFENDANT:*  Yes, sir.

12  　　　　*THE COURT:*  Has anyone estimated for you what your

13  guideline sentence may be?

14  　　　　*MS. BYRD:*  We've talked about a range, Your Honor.

15  　　　　*THE COURT:*  Ms. Byrd, what did you estimate that

16  guideline to be?

17  　　　　*MS. BYRD:*  It depends.  Depends.  Anywhere from a --

18  worst case scenario, which I will have to look up, the best

19  case scenario is zero to six, and the worst case scenario is 12

20  to 18.

21  　　　　*THE COURT:*  Mr. Rocktashel, do you agree with that

22  estimated sentence and the qualifying it depends, which is a

23  good lawyerly answer, we'll all agree.

24  　　　　*MR. ROCKTASHEL:*  Yes, Your Honor.  The worst case

25  scenario as we calculated is something in the vicinity of 12 to

1    18 months.

2         THE COURT:  Mr. Wilson, a prior conviction can affect

3    your guideline sentencing range.  Do you understand that?

4         THE DEFENDANT:  Yes, sir.

5         THE COURT:  Have you ever been on supervision for a

6    crime before such as probation, parole, supervised release or

7    ARD?

8         MS. BYRD:  He may have been on supervision, Your

9    Honor.

10        THE COURT:  May have been.  All right.  Mr. Wilson, a

11   probation officer will ultimately prepare a pre-sentence report

12   which will set your guideline sentencing range.  If you

13   disagree with the report, this guilty plea is still binding on

14   you.  But you can contest the report with the officer and after

15   that before me, if necessary.  The government can also contest

16   the pre-sentence report.  Do you understand this?

17        THE DEFENDANT:  Yes, sir.

18        THE COURT:  Do you understand, as well, that your

19   attorney, the attorney for the government, can agree on facts

20   and make recommendations, motions and requests at sentencing

21   but that I do not have to do what they ask me to do?  Do you

22   understand that?

23        THE DEFENDANT:  Yes, sir.

24        THE COURT:  Nevertheless, this plea is binding on you,

25   whether or not I agree with their facts and recommendations or

1    grant their motions and requests.  Do you understand this?

2              *THE DEFENDANT:*  Yes, sir.

3              *THE COURT:*  If your attorney, Ms. Byrd, or anyone else

4    has estimated your guideline at this time, and she has with a

5    qualifying statement, and I determine after I review the

6    pre-sentence report that the guideline is different from what

7    has been estimated to you, you cannot withdraw your guilty

8    plea.  Do you understand that?

9              *THE DEFENDANT:*  Yes, sir.

10             *THE COURT:*  In no event can the guideline sentence

11   exceed the maximum sentence permitted under the United States

12   Code.  Do you understand this?

13             *THE DEFENDANT:*  Yes, sir.

14             *THE COURT:*  Do you understand that as a consequence of

15   your guilty plea you may be required to submit to DNA sampling?

16   Do you understand that?

17             *THE DEFENDANT:*  Yes, sir.

18             *THE COURT:*  Do you understand as well that the

19   guidelines sentencing range is advisory only and that after

20   your guideline range has been determined, the Court has the

21   authority to impose a sentence that is more severe or less

22   severe than the sentence prescribed by the guidelines.  Do you

23   understand that?

24             *THE DEFENDANT:*  Yes, sir.

25             *THE COURT:*  Do you understand that there is no more

1    parole; that you must serve the whole time of any imprisonment

2    to which you are sentenced?  Do you understand that?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  Do you understand, as well, that you can

5    appeal your sentence to a higher court, which could modify or

6    set aside the sentence order or order me to resentence you?  Do

7    you understand that?

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  The government can also appeal your

10   sentence.  Do you understand this?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  With all of the information that we have

13   discussed so far, is it still your desire to plead guilty?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  Are you pleading guilty of your own free

16   will because you are, in fact, guilty?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  For the record, the Court notes the guilty

19   plea form has been signed by the defendant and has been

20   accepted by the Court.  Now, the Court understands that there

21   is a written plea agreement in this case.  Mr. Wilson, did you

22   go over the plea agreement with your attorney, Ms. Byrd?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  Did your attorney fully explain the plea

25   agreement to you?

1          *THE DEFENDANT:*  Yes, sir.

2          *THE COURT:*  Did you have enough time to talk to Ms.

3     Byrd about the plea agreement?

4          *THE DEFENDANT:*  Yes, sir.

5          *THE COURT:*  Did you voluntarily sign the plea

6     agreement?

7          *THE DEFENDANT:*  Yes, sir.

8          *THE COURT:*  Mr. Rocktashel, for the benefit of the

9     Court, would you summarize the terms of the plea agreement?

10          *MR. ROCKTASHEL:*  Certainly, Your Honor.  The

11     defendant's agreed to waive indictment by the grand jury and

12     plead guilty to the felony information charging him with making

13     a bomb threat to a federal prison facility using the internet,

14     in violation of Title 18 U.S. Code, section 844, subsection E.

15     In the plea agreement he's acknowledged the statutory maximum

16     penalties that the Court has already reviewed with him with

17     respect to the waiver of indictment.

18          The United States has agreed, in exchange for the

19     defendant's plea of guilty, to bring no other criminal charges

20     against him arising out of the offense charged in the

21     information with the exception of any criminal tax charges, if

22     any apply in this case.

23          The United States Attorney has also agreed to make a

24     nonbinding recommendation of a three level reduction in offense

25     level for acceptance of responsibility.  But the defendant

1    acknowledges that the Court is not bound by that

2    recommendation.

3           The United States Attorney has also agreed to make

4    another nonbinding recommendation of a specific sentence within

5    the applicable guideline range reserving the right to recommend

6    a sentence within that -- the maximum end of that range.

7           This is a nonbinding plea agreement, and the defendant

8    has acknowledged that the Court is not a party to and is not

9    bound by any of the recommendations of the parties in this case

10   and is free to impose any lawful sentence up to the maximum of

11   ten years in jail, the maximum fine of $250,000, and the

12   maximum term of supervised release of three years.

13          That is a summary of the highlights of the plea

14   agreement, Your Honor.

15          THE COURT:  Mr. Rocktashel, thank you very much.  Ms.

16   Byrd, is that an accurate summary of the terms of the plea

17   agreement, as you understand them?

18          MS. BYRD:  Yes, Your Honor, it is.

19          THE COURT:  Mr. Wilson, do you agree that the

20   government has accurately described the plea agreement as

21   Mr. Rocktashel, the government's attorney, has just articulated

22   it to the Court?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Do you have any questions about what is

25   contained in the plea agreement itself?

1             *THE DEFENDANT:*  No, sir.

2             *THE COURT:*  Other than the terms of the plea

3    agreement, did anyone promise or offer you anything else in

4    order to get you to plead guilty?

5             *THE DEFENDANT:*  No, sir.

6             *THE COURT:*  Have there been any threats against you or

7    any member of your family or any other person that caused you

8    to sign the plea agreement?

9             *THE DEFENDANT:*  No, sir.

10            *THE COURT:*  Did anyone use force or violence or any

11   other means to get you to plead guilty?

12            *THE DEFENDANT:*  No, sir.

13            *THE COURT:*  Are you entering this plea agreement of

14   your own free will?

15            *THE DEFENDANT:*  Yes, sir.

16            *THE COURT:*  Do you understand the terms of the plea

17   agreement are only recommendations to me and that I will decide

18   the sentence you receive?

19            *THE DEFENDANT:*  Yes, sir.

20            *THE COURT:*  Do you understand, as well, that your

21   guilty plea is binding on you no matter what sentence I impose,

22   even if it is different than the recommendation in the plea

23   agreement?

24            *THE DEFENDANT:*  Yes, sir.

25            *THE COURT:*  Very well.  Mr. Wilson, in the information

1    you are charged with the following; making a threat,

2    maliciously conveying false information.  Knowing the same to

3    be false through the use of electronic mail message sent by way

4    of the internet concerning an attempt -- an alleged attempt

5    being made to kill, injure and intimidate prison staff and

6    inmates at the Low Security Correctional Institution, Allenwood

7    and to unlawfully damage and destroy a building, vehicle and

8    other real and personal property by means of an explosive in

9    and affecting interstate or foreign commerce, all in violation

10   of Title 18 United States Code, section 844(e).

11          At this time I would like the Assistant United States

12   Attorney to place on the record what facts the government would

13   present in support of these charges.  Mr. Rocktashel.

14          *MR. ROCKTASHEL:*  Thank you, Your Honor.  During the

15   weekend of March 30, 2012 to April 2nd, 2012 the defendant,

16   Matthew Mitchell Wilson, and his parents traveled from North

17   Carolina to Pennsylvania.  Wilson and his parents came to visit

18   his brother, Michael Wilson, who was serving a sentence at the

19   Low Security Correctional Institution at Allenwood.

20          While in the area, they stayed at the Comfort Inn in

21   New Columbia, Pennsylvania, just down Route 15 from the prison.

22   During a stay at the motel, Wilson used a computer in the lobby

23   to send an e-mail to the general mailbox listed on the Low

24   Security Correctional Institution, or LSCI, website.

25          On Saturday March 31st 2012 at 7:03 p.m., he wrote in

1    the subject line of the e-mail, quote, There is a bomb at your

2    LSCI Allenwood, closed quote.  In the body of the message

3    Wilson typed, I have placed a bomb in your facility.  It will

4    blow at 8:45 a.m. tomorrow.

5         The following Monday, April 2nd, 2012, after prison

6    staff read the e-mail message, the LSCI was placed on lockdown

7    status.  A canine bomb detection unit from the Union County

8    Sheriff's Office conducted a search at approximately 9:13 a.m.

9    The search ended at 10:30 a.m. and no bombs or incendiary

10   devices were discovered.  The lockdown of the facility

11   concluded at 12:00 p.m.

12        The FBI was able to identify Wilson by checking the

13   inmate visitor list and guest records and the wireless network

14   at the Comfort Inn.

15        On August 20, 2012, FBI agents interviewed Wilson and

16   his parents at their home in North Carolina.  Wilson admitted

17   creating a Yahoo! e-mail accounts, sanchezmark624@yahoo.com on

18   the desktop computer in the lobby of the motel.  He then found

19   the website for the LSCI and located a contact e-mail for the

20   prison facility.

21        Using the newly created Yahoo! e-mail account, Wilson

22   composed the bomb threat and sent it to the institution e-mail

23   address.  He told the FBI that he was lonely about his brother

24   being in prison and was taking three medications prescribed by

25   a psychiatrist.

1          Prior to this incident in early June 2012, the Union

2    County, North Carolina Sheriff had obtained an involuntary

3    commitment of Wilson after he placed a threatening note on the

4    door of his home written to appear as if someone else had left

5    the note.

6          We note, Your Honor, that the FBI investigation

7    revealed that Yahoo! utilizes servers outside the Commonwealth

8    of Pennsylvania for the purposes of routing e-mails, such as

9    one sent by the defendant in this case.

10          That's a summary of the facts supporting the guilty

11   plea, Your Honor.

12          *THE COURT:*  All right.  Mr. Rocktashel, thank you very

13   much.  Mr. Wilson, do you fully admit to all of those facts?

14          *MS. BYRD:*  Your Honor, we were previously advised that

15   a drug detection canine unit from Union County was called in

16   rather than a canine bomb detection unit.  So with that caveat,

17   Mr. Wilson will tell that he agrees with everything.

18          *THE COURT:*  Mr. Rocktashel, is that just an error or

19   --

20          *MR. ROCKTASHEL:*  I don't know.

21          *THE COURT:*  I assume there is some distinction there,

22   or maybe you just aren't aware of that.

23          *MR. ROCKTASHEL:*  I think it may be a distinction

24   without a difference for purposes of today's proceedings, Your

25   Honor.  We'll certainly check into that.

1          *THE COURT:*  All right.  That comment is noted, Ms.

2     Byrd.  Thank you.

3          *MS. BYRD:*  Thank you.

4          *THE COURT:*  Aside from that, Mr. Wilson, based upon

5     all of the information I have provided you today, including but

6     not limited to your rights to a trial by a jury of your peers,

7     do you now plead guilty?

8          *THE DEFENDANT:*  Yes, sir.

9          *THE COURT:*  The Court makes the following finding; the

10    defendant is fully alert, competent and capable of entering an

11    informed plea, that this plea is a knowing and voluntary plea

12    supported by an independent basis in fact, containing each of

13    the essential elements of the offense as pled to.

14         The defendant's plea of guilty is, therefore, accepted

15    and he is now adjudged guilty of the offense.  The Court will

16    now enter an order memorializing these findings.  The Court

17    finds that the defendant is acting voluntarily and has not as a

18    result of force or threats or promises and that he understands

19    his rights and the consequences of his plea and that he

20    voluntarily waives his right to trial.

21         The Court further finds that the plea has a basis in

22    fact.  The Court accepts the plea of guilty to the indictment.

23    It is ordered that the United States Probation Office shall

24    conduct a pre-sentence investigation and shall prepare a

25    pre-sentence report.  The case will be listed for sentencing on

1    the Court's receipt of the pre-sentence report.

2            MS. BYRD:  Your Honor, just for the record, this is an

3    information rather than an indictment to which Mr. Wilson is

4    pleading guilty.

5            THE COURT:  That is true.  I will note that

6    accordingly.

7            MS. BYRD:  Thank you.

8            THE COURT:  Now, in terms of detention,

9    Mr. Rocktashel, do you object to Mr. Wilson's continued release

10   from custody pending sentencing in this matter?

11           MR. ROCKTASHEL:  Your Honor, we have reviewed the

12   pretrial services report in this case, and we see that the

13   recommendation is that he be released on his personal

14   recognizance with 11 conditions.  We concur in that

15   recommendation of release on conditions and we're not seeking

16   detention at this time.

17           THE COURT:  All right.  Thank you.  Mr. Wilson, you

18   will continue to be released on your own recognizance, in

19   accordance with the following special conditions.

20   Mr. Rocktashel has referenced them.  Let me state them to you

21   specifically.

22           You shall report to the United States Probation Office

23   as directed.  You shall continue to participate in an

24   educational program.  You shall surrender your passport.  You

25   shall not apply for any new passport.  You shall continue to

1    participate in mental health counseling, following the

2    recommendations of your treatment provider.  You shall not

3    possess a firearm or dangerous weapon.  You shall abstain from

4    alcohol use.  You shall refrain from use or unlawful possession

5    of a narcotic drug or other controlled substances defined at

6    Title 21, United States Code, section 802, unless prescribed by

7    a licensed medical practitioner.

8         You shall submit to random drug testing and refrain

9    from obstructing or attempting to obstruct or in any fashion

10   with the efficiency and accuracy of any prohibited substance

11   testing, which is required as a condition of your release.  You

12   shall comply with prohibitions against traveling inside and

13   outside of the district, as noted.  You shall report as soon as

14   possible any contact with law enforcement.

15        Counsel, are there any other issues that we need to

16   address today?  Ms. Byrd?

17        *MS. BYRD:*  Just only with respect to travel, that he

18   should be permitted to travel to meet with his attorney if

19   necessary.

20        *THE COURT:*  We understand that.  You understand that.

21   You are certainly entitled to travel here.  We understand

22   you're a resident in North Carolina, and you're in school in

23   North Carolina and certainly permitted to travel here.

24        Mr. Rocktashel, I assume there is no object to that,

25   coming north, to meet with Ms. Byrd.  That was expected.

1          *MR. ROCKTASHEL:*  No, of course not, Your Honor.

2          *THE COURT:*  Is there anything else, Mr. Rocktashel,

3    that I should note at this point?

4          *MR. ROCKTASHEL:*  Your Honor we have one issue as it

5    relates to the pre-sentence investigation.  As the Court may

6    surmise, the question of the defendant's mental health may well

7    be a sentencing issue in this case.  And as we noted, the

8    defendant was involuntarily committed at one point at the Old

9    Vineyard Hospital in Winston-Salem, North Carolina.  We believe

10   those records may be useful to the court in connection with

11   evaluating the defendant and imposing a sentence in the case,

12   as would any treatment records for psychiatric or psychological

13   treatment currently being provided.

14          I don't know how the Court planned to address that or

15   whether the defendant was expected to execute releases for that

16   information to the probation office.  But we would recommend

17   that practice here.  We think it would avoid undue delay for

18   the Court and make sure that the Court has complete psychiatric

19   and psychological records to fashion an appropriate sentence.

20          *THE COURT:*  Ms. Byrd, do you care to address that?  I

21   see that it was an inpatient treatment of about 15 months ago,

22   according to the pre-sentence report, in June of 2012.

23          *MS. BYRD:*  I think this matter can be taken up during

24   the pre-sentence investigation.  If the probation officer is of

25   the view that he needs records that we aren't able to provide,

1   then we can then take it up with the Court and fully brief the

2   issue.  Obviously he has certain privacy rights with respect to

3   his medical records, and I'm really not prepared fully to

4   address Mr. Rocktashel's request today.  Although, I do believe

5   we can satisfy the probation officer and the Court with

6   sufficient records to enable the Court to impose a sentence in

7   accordance with 3553(a).

8        *THE COURT:*  It might be helpful for the Court to have

9   those records from the Old Vineyard Mental Behavioral Health

10  Services Center in Winston-Salem, North Carolina from 15 months

11  ago.  I don't know that, but I would suspect that, and I have

12  noted myself that might be helpful.  Would counsel come to

13  sidebar just a minute?  Mr. Wilson, you stay right where you

14  are.  I'm going to talk to Mr. Rocktashel and your attorney for

15  just a moment.

16       *THE COURT REPORTER:*  Judge, would you like this on the

17  record?

18       *THE COURT:*  No, let's go off the record for just a

19  minute.  Thank you.

20  (Off-the-record sidebar discussion between Court and counsel.)

21       *THE COURT:*  Mr. Wilson, I wanted to talk to Ms. Byrd

22  and to Mr. Rocktashel, who is the assistant United States

23  attorney, regarding this mental health for this commitment that

24  you had about 15 months ago.

25            I am going to deny the government's request at this

1    time.  Ms. Byrd, I think, has the opinion that maybe this

2    matter can be sorted out, and we'll let you figure that out, I

3    guess, over the next month or so.  I am not setting that down

4    as part of an order.  I am sure you can sort that around in

5    your own mind in probably the next 30 days.  I'm sure Ms. Byrd

6    will give you some guidance in that regard.

7           I guess if it can't be sorted out, the Court will

8    certainly entertain a motion from the government and we'll

9    consider that, as well as any briefs necessary to clarify the

10   matter for the Court's benefit.  All right.

11          Aside from that issue, and I thank you for bringing

12   that to the Court's attention, Mr. Rocktashel, is there

13   anything else that the Court needs to attend of today?  Or Ms.

14   Byrd, can you think of anything else?

15          *MS. BYRD:*  No, Your Honor.

16          *THE COURT:*  Mr. Rocktashel.

17          *MR. ROCKTASHEL:*  No, Your Honor.  Thank you.

18          *THE COURT:*  Thank you very much.  Court stands

19   adjourned.

20          *THE COURTROOM DEPUTY:*  Please rise.

21               (2:38 p.m., court adjourned.)

22

23

24

25

1                        REPORTER'S CERTIFICATE

2

3            I, Lori A. Fausnaught, RMR, CRR, Official Court

4    Reporter for the United States District Court for the Middle

5    District of Pennsylvania, appointed pursuant to the provisions

6    of Title 28, United States Code, Section 753, do hereby certify

7    that the foregoing is a true and correct transcript of the

8    within-mentioned proceedings had in the above-mentioned and

9    numbered cause on the date or dates hereinbefore set forth; and

10   I do further certify that the foregoing transcript has been

11   prepared by me or under my supervision.

12

13                             s/Lori A. Fausnaught, RMR, CRR

14                             ----------------------------
                               Lori A. Fausnaught, RMR, CRR
15                             Official Court Reporter

16

17   REPORTED BY:

18       LORI A. FAUSNAUGHT, RMR, CRR
         Official Court Reporter
19       United States District Court
         Middle District of Pennsylvania
20       240 West Third Street, Suite 446
         Williamsport, PA 17701
21

22

23           (The foregoing certificate of this transcript does
     not apply to any reproduction of the same by any means unless
24   under the direct control and/or supervision of the certifying
     reporter.)

25